

**SIGNED this 20th day of May, 2013.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| IN RE: | § | CASE NO. 12-12215-CAG |
|---|---|---|
|  | § |  |
| CHRISTOPHER N. SCHUMACHER, | § | CHAPTER 7 |
|  | § |  |
| Debtor. | § |  |

**MEMORANDUM OPINION AND ORDER DENYING MOTION
OF THE UNITED STATES TRUSTEE TO DISMISS CASE
PURSUANT TO 11 U.S.C. § 707(b)**

Came on to be considered the United States Trustee's ("UST") Motion to Dismiss Case for Abuse Pursuant to 11 U.S.C. §707(b) (ECF No. 20) ("Motion to Dismiss for Abuse"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. § 1408(1). The Court held a hearing on this motion on February 27, 2013, and took the matter under advisement. For reasons discussed below, the Court finds that the UST's motion should be DENIED.

## F<small>ACTUAL</small> A<small>ND</small> P<small>ROCEDURAL</small> B<small>ACKGROUND</small>

Prior to moving to Austin, Texas, Debtor lived outside of Texas with his ex-wife. They have two adult children together, both of whom are pursuing undergraduate degrees. It appears that Debtor's move to Austin was at least partially motivated by the loss of a lucrative job in New York City. He has found stable alternative employment in Austin, reporting a yearly salary of $51,399.96 in his schedules. This is substantially less than his previous salary. Debtor's ex-wife did not move to Austin with him. Although the record is unclear, they may have been separated for some time before his move.

Debtor filed his Chapter 7 Petition on September 28, 2012 (ECF No. 1) ("Original Schedules"). In his Original Schedules, he listed himself as single and did not account for his ex-wife's income, although they were still married at that time. Debtor listed his ex-wife as a co-debtor on only one claim—an unsecured debt of $38,517.00. Debtor also included a monthly expense of $1,700 for "college tuition" in schedule J and a $55,000.00 unsecured priority federal tax claim in Schedule E. He did not list any sort of retirement savings or pension plan.

Debtor amended his Original Schedules (ECF No. 9) ("Amended Schedules") on November 16, 2012, changing the federal tax claim to $64,127.63 and adding a New York state priority, unsecured tax claim of an unknown amount. Debtor also added several unsecured, non-priority claims totaling $66,189.47. The summary of schedules in the Amended Schedules listed monthly expenditures of $6,413.51, as opposed to the $5,875.67 monthly expenditures listed in the Original Schedules. However, they do not contain an amended Schedule J to explain this increase in expenditures. Both the Original Schedules and the Amended Schedules list a piece of real property in Connecticut valued at $650.00.

2

On November 21, 2012, Debtor filed an Amended Motion for Relief from Stay (ECF No. 12) for the purpose of divorcing his ex-wife, which the Court granted on December 11, 2012 (ECF No. 18). According to Debtor, he moved to lift the automatic stay at the UST's behest in order to settle property and support issues affecting the bankruptcy. The UST filed her Motion to Dismiss for Abuse (ECF No. 20) on December 21, 2012. In the Motion to Dismiss for Abuse motion, the UST argued that the totality of the circumstances merit dismissal per 11 U.S.C. § 707(b)(3)(B) because Debtor's schedules were inaccurate, Debtor was paying for his adult children's college tuition, Debtor had a significant income, and Debtor had the ability to pay a significant portion of his unsecured debts from future income.

Debtor filed for divorce in Travis County, Texas, obtaining a Final Divorce Decree on January 9, 2013. The Final Divorce Decree orders Debtor "to pay a total amount of $2,000/month towards," his children's "college tuition, books, room & board, travel expenses for visitation, etc. until June 2015 or until the last child has received his/her undergraduate degree, whichever occurs first." Both the "Property to Wife" section and the "Debts to Husband" section of the Final Divorce Decree require Debtor to pay $625.00 from his retirement benefits to his wife each month starting when their first child obtains his or her degree and an additional $625 each month once their second child obtains his or her degree. The Final Divorce Decree also makes Debtor responsible for half of the former couple's New York state tax liability through 2010 and all of their federal tax liability through 2011. Debtor admitted that he had not yet filed his New York state tax returns for 2009 or 2010 at the February 27, 2013, hearing. The UST alleges that Debtor has failed to file his federal tax returns since 2008, which Debtor denies.

Debtor filed a response to the Motion to Dismiss for Abuse (ECF No. 21) ("Response to Motion to Dismiss") and again amended his schedules (ECF No. 22) ("Final Amended

3

Schedules") on January 9, 2013, the same day he obtained his divorce decree. The Final Amended Schedules include a $2,000 monthly expense for "court ordered school support" in place of the $1,700 "college tuition" payment. They list real property valued at $650,000, as opposed to the $650 listed in the prior versions. Debtor added a $2,550.04 monthly draw from a retirement plan to his personal property under Schedule B. He also added his ex-wife as a co-debtor on the federal and state tax liabilities and increased the tax-related expenses in his monthly budget from $600.00 to $913.00, among other changes.

The Court held a hearing on the Motion to Dismiss for Abuse on February 27, 2013, and took the matter under advisement. At the Court's invitation, the UST filed her Brief in Support of Motion of the United States Trustee to Dismiss Case Pursuant to 11 U.S.C. §707(b) (ECF No. 27) ("UST's Brief") on March 13, 2013. Debtor filed his Response to the United States Trustee's Brief (ECF No. 28) ("Response to UST's Brief") on March 19, 2013.

## LEGAL STANDARD

The United States Trustee seeks dismissal for abuse under 11 U.S.C. § 707(b)(3)(B).[1] Dismissal for abuse is warranted when "the totality of the circumstances…of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(B).[2] As the moving party, the UST carries the burden of demonstrating abuse by a preponderance of the evidence. *Dumas*, 419 B.R. at 707-08.

---

[1] When the UST filed her Motion to Dismiss for Abuse, Debtor's schedules showed him to be a below-median debtor. The UST contends that subsequent amendments to his schedules show him to be an above-median debtor. However, she has not claimed that the presumption of abuse arises or sought dismissal under 11 U.S.C. § 707(b)(2). The Court, therefore, will not reach this issue.

[2] Prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), the standard for dismissal under section 707(b) was "substantial abuse" and courts had developed various tests for determining whether substantial abuse existed. BAPCPA changed the standard from substantial abuse to abuse and adopted a totality of the circumstances test. Courts continue to apply many factors from the pre-BABCPA era when determining whether abuse exists. *In re Dumas*, 419 B.R. 704, 708 (Bankr. E.D. Tex. 2009).

4

Courts have identified a number of factors that are relevant to this fact intensive, case specific determination. The factors include, but are not limited to, the following:

1) Whether the Debtors could pay a substantial portion of their debts from future income in a hypothetical Chapter 13 case;
2) Whether the bankruptcy petition was filed due to sudden illness, calamity, disability or unemployment;
3) Whether the Debtors incurred cash advances and made consumer purchases far in excess of their ability to repay;
4) Whether the Debtors' proposed family budget is reasonable;
5) Whether the Debtors seek to reaffirm a large amount of secured debt to the detriment of unsecured creditors;
6) Whether the Debtors' schedules and statement of current income and expenses reasonably and accurately reflect their true financial condition;
7) Whether the Debtors have a stable source of income;
8) Whether the Debtors are eligible to file a Chapter 13 case;
9) Whether there are state remedies or private negotiations that the Debtors can invoke to ease their financial predicament;
10) Whether the Debtors' expenses can be reduced without depriving them of basic necessities; and
11) Whether the petition was filed in good faith.

*In re Camp*, 416 B.R. 304, 312 (Bankr. E.D. Tex. 2009).

A number of courts have held that the first factor, the Debtor's ability to pay a substantial portion of his unsecured debt from future income, is the most important factor. *See e.g. In re Sarah/Bradley FELSKE*, 385 B.R. 649, 654 (N.D. Ohio 2008), *In re Lenton*, 358 B.R. 651 (Bankr. E.D. Pa. 2006); *In re Richie*, 353 B.R. 569 (Bankr. E.D. Wis. 2006); *In re Pak*, 343 B.R. 239, 243 (Bankr. N.D. Cal. 2006); *In re Watkins*, 216 B.R. 394, 396 (Bankr. W.D. Tex. 1994).

### PARTIES' CONTENTIONS AND LEGAL ANALYSIS

The UST contends that the totality of Debtor's circumstances demonstrates abuse under section 707(b)(3)(B) in light of the factors set forth above. Her arguments focus mainly on the first, fourth, sixth, ninth, and tenth factors. Specifically, the UST argues that there are significant

5

problems in Debtor's schedules, that he could reduce his tax liability through private negotiation, that his expenses are not reasonable, and that he could pay his unsecured creditors over 50% on their claims by eliminating expenses. The UST places special scrutiny on the $2,000 monthly expense for the Debtor's adult children's college education. Debtor contends that the totality of the circumstances does not demonstrate abuse. This Court finds that the UST has not met her burden of showing abuse.

Debtor's Contribution to Adult Children's Education Pursuant to the Final Divorce Decree

The appropriateness of Debtor's contribution to his adult children's college education (the "college-related expense") is central to the first, fourth, tenth, and eleventh factors that guide courts in determining whether the totality of the circumstances demonstrates abuse. This expense is also the subject of significant argument in this case. If it were clear that this expense is inappropriate, the totality of the circumstances would likely demonstrate abuse. The UST contends that expenses related to the education of adult children are generally not found to be reasonable in a section 707(b)(3)(B) analysis. The UST also notes that Debtor could pay his unsecured creditors more than 50% on their claims by eliminating the college-related expense alone and implies that this expense suggests bad faith.[3] Debtor argues that the college-related expense is reasonable because it is a domestic support obligation he was ordered to pay by a Texas State Court. Debtor further argues that the payments are reasonable because they do not come out of his personal income, but instead from a retirement income to which his ex-wife has a community claim. According to Debtor's counsel, Debtor's ex-wife opted to temporarily redirect her interest in that income to their children. This Court finds that the college-related

---

[3] Per 11 U.S.C. § 707(b)(3)(A), filing in bad faith establishes a separate grounds for dismissal from abuse under section 707(b)(3)(B). Although the UST implied that Debtor filed in bad faith on multiple occasions, she has not moved for dismissal under section 707(b)(3)(A). Bad faith is, nevertheless, relevant of the totality of the circumstances analysis.

6

expense is a domestic support obligation, Debtor's ex-wife may have a right to the retirement income that funds the college-related expense,[4] and there is no tangible evidence of bad faith. Because the burden of proof lies with the Trustee, this Court will treat the college-related expense as legitimate.

The UST concedes that the Court may consider post-petition changes in Debtor's circumstances when deciding whether to dismiss a case under §707(b)(3),[5] but argues that the entry of the Final Divorce Decree does not transform this unreasonable expense into a reasonable one. Instead, the UST urges the Court to treat the Final Divorce Decree like a contractual obligation which would not necessarily be reasonable under section 707(b)(3). She argues that college-related expenses are only reasonable when debtors demonstrate a special need or significant sacrifice,[6] which Debtor has not shown. Debtor argues that the college-related expense is a domestic support obligation, making it a reasonable expense.

Support for adult children or contributions to their college education are generally not reasonable expenses in the context of section 707(b)(3)(B).[7] *U.S. Trustee v. Staub (In re Staub),* 256 B.R. 567, 570-71 (Bankr. M.D. Pa. 2000) ("educational expenses for adult children are discretionary, and are not expenses that should be foisted upon a debtor's pre-petition

---

[4] Debtor did not offer any testimony regarding his wife's claim to his retirement income. However, under the Final Divorce Decree, part of Debtor's retirement income is to be apportioned to his wife once their children obtain undergraduate degrees. This Court finds it plausible that Debtor's ex-wife had a significant claim to his retirement income and opted to temporarily redirect that income to their children.

[5] The United States Trustee correctly cites to *U.S. Trustee v. Cortez (In re Cortez)*, 457 F.3d 448 (5th Cir. 2006) for this contention.

[6] The UST argues cites to *Riegodedios* to support this argument. This Court agrees with the UST's reading of *Riegodedios* to the extent that the debtor's sacrifice and the child's difficulty in obtaining loans to fund her education helped to justify college-related expenses. However, *Riegodedios* is distinguishable from Debtor's case because there was no divorce decree or legal obligation requiring the debtors to pay college-related expenses. *In re Riegodedios*, 146 B.R. 691 (Bankr. E.D. Va. 1993).

[7] At the hearing on the Motion to Dismiss for Abuse, the UST stated that there is a "plethora" of case law supporting this "undisputed premise." Although the UST failed to cite to any of this case law, the Court has confirmed this through its independent research.

7

creditors"); ***In re Walker***, 383 B.R. 830, 838 (Bankr. N.D. Ga. 2008) ("supporting adult children at the expense of unsecured creditors is not permissible"); ***In re Hicks,*** 370 B.R. 919, 923 n.8 (Bankr. E.D. Mo. 2007) (noting that contributions to an adult child's education would support a finding of abuse under section 707(b)(3)(B)).[8] Although a parent's aspiration to put his or her children through college is commendable, parents do not normally have a legal duty to do this. Debtors, however, have a legal duty to pay their creditors. ***In re Mastromarino***, 197 B.R. 171, 178 (Bankr. D. Me. 1996). For better or worse, our bankruptcy system is not designed to enable debtors to fund their adult children's college education at their creditors' expense.

When a debtor has a legal duty to support another as a dependent or pursuant to a domestic support obligation, fulfilling that duty is not an abuse of the bankruptcy system.[9] In *Maioroino,* the court permitted a debtor's contributions to his adult child's college education because his agreement to make these payments was a domestic support obligation that was incorporated into a state probate court judgment. ***In re Maioroino***, 435 B.R. 806, 808 (Bankr. D. Mass. 2010). In *Smith,* the court permitted assistance to an adult child attending college because state law required the debtors to support her. ***In re Smith***, 269 B.R. 686, 689-90 (Bankr. W.D. Mo. 2001).

When there is no legal duty to provide support, doing so can constitute abuse. In *Mastromarino*, for example, the court did not hesitate to subtract alimony and child support from a debtor's disposable income when considering whether there was abuse under section 707(b)(3).

---

[8] The *Hicks* court also noted that "For an adult to be able to attend college as a full-time student is a luxury, not a necessity, and the costs associated with such attendance do not constitute expenses incurred for the provision of a person's *necessary* care and support" in the context of the section 707(b)(2) means test. *Hicks*, 370 B.R. at 923 n.8 (Bankr. E.D. Mo. 2007).

[9] 11 U.S.C. § 1325(b)(2) provides courts with guidance in determining how much of the debtor's income is disposable income that could be contributed to a hypothetical Chapter 13 plan. *See e.g.* ***In re Dowleyne***, 400 B.R. 840, 846 (Bankr. M.D. Fla. 2008); ***In re Sharp,*** 415 B.R. 803, 810-11 (D. Colo. 2009). Per § 1325(b)(2)(A)(i)– amounts "reasonably necessary to be expended…for the maintenance of support of…a dependent of the debtor, or for a domestic support obligation" offset his or her disposable income.

8

The court did not allow expenses for the debtor's domestic partner and her children, to whom he had no legal obligation. *Mastromarino*, 197 B.R. at 178-79. *See also* **Meler v. U.S. Trustee (In re Meler)**, 295 B.R. 625, 630-31 (D. Ariz 2003) (support for debtor's live-in girlfriend and her children were not reasonable expenses because they were not debtor's dependents and he had no legal obligation to provide for them); **DeAngelis v. Ramsay (In re Ramsay)**, 440 B.R. 85, 94 (Bankr. M.D. Pa. 2010) (debtor could not justify mortgage payments on a large home needed to house his fiancé and her children, whom had no legal duty to support).

A divorce decree does not necessarily make college-related expenses reasonable. In *Hester,* the debtor owed his ex-wife $10,243.04 pursuant to their divorce decree. **In re Hester**, 330 B.R. 809, 813 (Bankr. M.D. Fla. 2005). The debtor listed monthly payments toward this debt as an expense on his schedules. *Id.* The court did not find the expense to be reasonable because the debt was not labeled as alimony or otherwise designated as a domestic support obligation in the divorce decree. In fact, the court found that the expense would constitute unfair favoritism of one unsecured creditor over another. *Id.* Payment of domestic support obligations, on the other hand, has been treated as an acceptable form of favoritism for public policy reasons. **Mickelson v. Leser (In re Leser)**, 939 F.2d 669, 672 (8th Cir. 1991); **In re Curtis**, 2 B.R. 43, 44 (W.D. Mo. 1979).

The Final Divorce Decree does not clearly state whether the college-related expense is a domestic support obligation. The "Child of the Marriage" section notes that "there is no child of the marriage of Petitioner and Respondent now under eighteen years of age or otherwise entitled to support and that none is expected." The "Property to Wife" and "Debts to Husband" sections do, however, order Debtor to pay his children, and later his wife, a set sum of money each

9

month. Debtor's Final Amended Schedules list the college-related expense as "court ordered school support."

Debtor cites to several cases noting that the function of the obligation and the parties' intent should guide the Court's determination of whether the college-related expense is a domestic support obligation rather than the language of the Final Divorce Decree. ***Boyle v. Donovan***, 724 F.2d 681, 683 (8th Cir. 1984) (debtor's obligation to pay college expenses as they came due was as a domestic support obligation because the parties intended it to function as support); ***Pino v. Pino (In re Pino)***, 268 B.R. 483, 489 (Bankr. W.D. Tex. 2001) ("The crucial issue in making this determination is the intent of the parties (or the divorce court) and the function the award was intended to serve at the time of the divorce"); ***Soffel v. Shaw (In re Shaw)***, 299 B.R. 107, 112-14 (Bankr. W.D. Pa. 2003) (marital settlement requiring debtor to pay for adult child's college education was a domestic support obligation pursuant to its practical function and the parties' intent). These cases examined the definition of domestic support obligations for the purpose of determining whether a debt is dischargeable under 11 U.S.C. § 523 rather than determining whether there was abuse justifying dismissal under 11 U.S.C. §707(b)(3). This Court finds them persuasive, if not authoritative, in defining domestic support obligations under federal bankruptcy law.

This Court finds additional guidance in 11 U.S.C. § 101(14A) (West 2013), which defines domestic support obligations under title 11 as "a debt that accrues before, on, or after the date of the order for relief in a case under this title . . . that is--

> (A) owed to or recoverable by—
>     (i) a spouse, former spouse, or child of the debtor . . .
> (B) in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor or such child's parent, *without regard to whether such debt is expressly so designated*;

10

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provision of—
   (i) a separation agreement, *divorce decree,* or property settlement agreement;
   (ii) an *order of a court* of record; or
   (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit;

This Court will, therefore, look to the parties' intent and the practical function of the college-related expense to determine the nature of Debtor's obligation. There is little evidence as to whether Debtor and his ex-wife intended the college-related expense to be a domestic support obligation. The fact that there is a set monthly payment toward "tuition, books, room & board, travel, expenses for visitation, etc" rather than a lump-sum award suggests that it was intended to be a domestic support obligation. In *Shaw,* the court held that the form of an obligation should follow its function, finding that a debtor's agreement to provide for his adult child's "tuition, room, board, books, supplies, fees, transportation, and clothing" was intended to be a domestic support obligation.[10] ***Shaw***, 299 B.R. at 113. Like in *Shaw*, the practical purpose of Debtor's college-related expense appears to be support. This Court will, therefore, treat the college-related expense as a domestic support obligation and, thus, a reasonable expense.

---

[10] In *Shaw*, the Court followed the Third Circuit's three factor test for discerning the parties' intent. ***Shaw***, 299 B.R. at 111-12. These factors include (1) the language and substance of the agreement in the context of the surrounding circumstances, (2) the parties' financial circumstances, and (3) the function served by the obligation. ***Id.*** (citing ***Gianakas v. Gianaksa (In re Gianakas)***, 917 F.2d 759, 762 (3rd Cir. 1990)). To this Court's knowledge, the Fifth Circuit has not formally adopted the *Gianakas* test. The Fifth Circuit developed a different test for determining whether a marital debt to an ex-spouse is in the nature of a domestic support obligation. This test directs courts to consider the parties' (1) relative earning power, (2) relative business opportunities, (3) educational background and probable future need for support, (4) relative physical condition, (5) fault for breakup, and (6) the benefits an innocent spouse would have received if the marriage had continued. **Chance v. White (In re White)**, 265 B.R. 547, 552 (Bankr. N.D.Tex 2001) (citing **Dennis v. Dennis (In re Dennis)**, 25 F.3d 274, 279 (5th Cir. 1994)). The *Dennis* test does not provide this Court with significant guidance in Debtor's case. This Court has limited information regarding Debtor's ex-wife, and the obligation is for the benefit of adult children who are not in either parent's custody. The parties' intent is determinative in the Fifth Circuit, much like in the Third Circuit. **Milligan v. Everet (In re Everet)**, 342 F.3d 358, 368 (5th Cir. 2003) (citing **In re Davidson**, 947 F.2d 1294, 1296-97 (5th Cir. 1991) and **Gianakas**, 917 F.2d at 762); *Pino*, 268 B.R. at 489-91 (Bankr. W.D. Tex. 2001) (citing **Dennis**, 25 F.3d at 279 and **Gianakas**, 917 F.2d at 762). This Court, therefore, finds *Shaw* to be useful persuasive authority in discerning intent.

Even if the college-related expense were not a domestic support obligation, the UST has not contradicted Debtor's claim that his ex-wife temporarily rescinded her right to Debtor's retirement income to allow this expense to go to their children. A portion of Debtor's retirement income may belong to his ex-spouse under ERISA or Texas state law. The parties presented nearly no evidence or legal arguments regarding how much, if any, of Debtor's retirement income is legally his own. This Court will not undermine a Texas State Court's treatment of Debtor's retirement income without more information.

The UST also implies that the Final Divorce Decree is evidence of bad faith, which can be a separate basis for dismissal under section 707(b)(3)(A). The UST suggests that, after she filed her Motion to Dismiss for Abuse, Debtor may have coerced or colluded with his ex-wife to create a domestic support obligation. Debtor's purported goal was to circumvent the precedent against allowing debtors to support their adult children while obtaining discharge, giving his children an expensive, private education at his creditors' expense. The UST further argues that the Debtor's attempt to tie his college-related expense to his retirement income in his Final Amended Schedules is a "post-petition creation of Debtor's" designed to cheat our bankruptcy laws. In fact, Debtor did not list any retirement income in his Original Schedules. This income appeared only after the Trustee filed her Motion to Dismiss for Abuse. This Court agrees that it would be abusive for a debtor to concoct a domestic support obligation he or she would not otherwise owe in order to reduce his or her disposable income. However, there is no evidence that the college-related expense was designed for this purpose. The content and timing of Debtor's Final Divorce Decree and Final Schedules may be suspicious in light of the UST's arguments in the Motion to Dismiss for Abuse, but this alone does not constitute proof of abuse or bad faith. Additionally, the UST never formally sought dismissal for bad faith under section

707(b)(3)(A). Because the burden lies with the UST, this Court must give Debtor the benefit of the doubt.

This Court finds that the college-related expense is a domestic support obligation. It is possible that this expense is also merely an allocation of income that legally belongs to Debtor's ex-wife. Furthermore, the Court finds no grounds for inferring bad faith. This Court will, therefore, treat the college-related expense as legitimate when assessing whether the totality of the circumstances demonstrates abuse and justifies dismissal under section 707(b)(3)(B).

Totality of the Circumstances

The UST bears the burden of showing that the totality of the circumstances demonstrates abuse. ***Dumas***, 419 B.R. at 707-08. The factors relevant to dismissal under section 707(b)(3)(B) do not lead this Court to a decisive answer as to whether abuse exists. Because the burden lies with the UST, the Court will not dismiss Debtor's case.

1) Whether the Debtor could pay a substantial portion of his debts from future income in a hypothetical Chapter 13 case;

This factor does not favor dismissal. This Court agrees with the prevailing opinion that the most important factor is whether a debtor can pay a significant portion of his or her debts out of future income. *See e.g.* ***Sarah/Bradley FELSKE***, 385 B.R. at 654; ***Lenton***, 358 B.R. 651; ***Richie***, 353 B.R. 569; ***In re Pak***, 343 B.R. at 243; ***Watkins***, 216 B.R. at 396. Debtor's Final Amended Schedules list liabilities totaling $1,370,605.82, including $329,740.34 in unsecured debt.[11] Debtor's monthly income from his salary and retirement savings is $5,761.15. His monthly expenses are $5,959.00, leaving him with a negative monthly income of $197.85. While Debtor could pay his unsecured creditors over 50% on their claims if he were to eliminate

---

[11] In his Final Amended Schedules, Debtor listed a $1,134,746.00 secured claim on a home in Connecticut, which he values at $650,000. Debtor's ex-wife is a co-debtor on this claim. It appears that Debtor and his ex-wife have decided to surrender the home due to their severely underwater mortgage. The only other secured claim Debtor reported is for his vehicle. He has accounted for payments on the vehicle in his budget.

13

the college-related expense, this Court has already found that expense to be reasonable. There is nothing in the record to suggest that Debtor's income will increase, and there is limited room for reduction in his budget. This Court, therefore, finds that Debtor could not repay a significant portion of his debts from his future income.

2) Whether the bankruptcy petition was filed due to sudden illness, calamity, disability or unemployment;

This factor favors Debtor. Debtor's bankruptcy appears to be the result of the loss of his job and his inability to find new employment at a comparable pay-grade. His pending divorce may have also contributed to his financial hardship. Although Debtor was no longer unemployed when he filed for bankruptcy, he has experienced a period of reduced income that will continue indefinitely. To Debtor's credit, his budget shows that he has reduced his spending in response to his reduced income. This Court, therefore, finds that Debtor's bankruptcy is the result of a calamity.

3) Whether the Debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

This factor does not favor dismissal. The UST argues that Debtor made cash advances and consumer purchases in excess of his ability to pay, but offers no specific examples or evidence of these advances and purchases. There is nothing in the record indicating that Debtor could not have paid his debts but for the failure of his career and his marriage. This Court cannot infer abuse from naked allegations that Debtor lived beyond his means.

4) Whether the Debtor's proposed family budget is reasonable;

This factor does not favor abuse. While a few of Debtor's expenses could be reduced, his overall budget is lean. This Court has already found the college-related expense to be reasonable. The UST takes issue with Debtor's $145 monthly storage expense and $1,100 rent. While these expenses may be high for a single man, the rest of Debtor's budget shows an effort

to cut costs. Debtor makes a reasonable $420 car payment on an older vehicle. He budgets only $426 for food, $100 for clothing, $60 for medical expenses, and $100 for entertainment each month. This Court finds Debtor's budget, taken as a whole, to be reasonable.

5) Whether the Debtor seeks to reaffirm a large amount of secured debt to the detriment of unsecured creditors;

This factor does not favor dismissal. To this Court's knowledge, the only debt Debtor seeks to reaffirm is on his vehicle, for which he owes a $420 monthly payment. It is not clear that Debtor could find less expensive alternative transportation if he forfeited his vehicle. This Court will not infer abuse from Debtor's decision to reaffirm this debt.

6) Whether the Debtor's schedules and statement of current income and expenses reasonably and accurately reflects his true financial condition;

This factor strongly favors dismissal. Debtor amended his schedules and statements twice, making it clear that the first two versions contained numerous errors. He initially failed to indicate the source of his retirement income and failed to list his ex-spouse as a co-debtor on their shared tax obligations. Additionally, he listed himself as single prior to his divorce and failed to account for his then wife's income. In his Response to UST's Brief, Debtor claimed that he and his ex-wife had been separated for a significant time before he filed for Bankruptcy and that his ex-wife's income is approximately $50,000 per year. While the UST implied that Debtor's ex-wife's income is higher, neither party has offered any evidence of her income. All versions of Debtor's schedules list his two adult children who do not reside with him as dependents. Debtor's state tax liability is not certain as he has not yet filed his 2009 and 2010 state tax returns. A number of creditors were simply left out of the Original Schedules. At the hearing on the Motion to Dismiss for Abuse, Debtor's counsel noted her embarrassment over these omissions and stated that Debtor had simply forgotten about some of his liabilities.

15

Despite the numerous corrections to Debtor's Original Schedules and Amended Schedules, the UST has serious concern as to the accuracy of the Final Schedules. This Court shares the UST's concern. While there is no evidence that Debtor purposely misrepresented his financial condition, his Original Schedules were woefully inaccurate and his Final Schedules may also contain significant errors. This Court is of the opinion that debtors have a responsibility to be accurate in their schedules and statements. This factor, therefore, favors dismissal.

7) Whether the Debtor has a stable source of income;

This factor favors dismissal. Debtor derives income from stable employment and a retirement savings plan. His reported monthly income is $5,761.15, making his yearly income $69,141. He does not earn as much as he did before the loss of his previous job, and the Final Divorce Decree requires him to give most of his retirement income to his children and ex-wife. Regardless, his income is stable and substantial.

8) Whether the Debtor is eligible to file a Chapter 13 case;

This factor favors dismissal. Debtor is eligible to file a Chapter 13 case.

9) Whether there are state remedies or private negotiations that the Debtor can invoke to ease his financial predicament;

This factor does not favor dismissal. The UST contends that Debtor could reduce his tax liabilities through private negotiation. This Court is skeptical as to the extent of any relief Debtor could obtain through private negotiations with the Internal Revenue Service and the State of New York. The potential for private negotiation is not promising enough to support a finding of abuse.

10) Whether the Debtor's expenses can be reduced without depriving him of basic necessities;

16

This factor does not favor dismissal. As noted in the Court's analysis of Debtor's family budget under the fourth factor, Debtor lives a frugal lifestyle. He could make only limited reductions to his budget without depriving himself of basic necessities.

11) Whether the petition was filed in good faith.

This factor does not favor dismissal. The timing and content of Debtor's Final Divorce Decree and the amendments to his schedules may be suspicious, but the UST has not presented tangible evidence of bad faith. This Court will not infer abuse from mere speculation.

It is not clear whether abuse exists in this case. Debtor has a stable and significant income and is eligible to file under Chapter 13. His schedules and statements are highly problematic. He lives a frugal lifestyle and is not seeking to reaffirm significant debt. It appears that his bankruptcy is the result of an unexpected change in his circumstances rather than unfettered spending. Most importantly, he could not repay a significant portion of his debts from his future income. The UST has not convinced this Court that the totality of the circumstances demonstrates abuse. Because the burden of proof lies with the UST, this Court declines to dismiss Debtor's case for abuse.

## CONCLUSION

IT IS, THEREFORE, ORDERED the UST's Motion to Dismiss for Abuse is DENIED.

# # #